NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3835-12T3

NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION,

    Plaintiff-Respondent,

v.

ALLOWAY TOWNSHIP and
COUNTY OF SALEM,

    Defendants-Respondents/
    Cross-Appellants,

and

WILLIAM R. COBB,

    Defendant-Appellant/
    Cross-Respondent.

| APPROVED FOR PUBLICATION |
| :---: |
| **January 2, 2015** |
| **APPELLATE DIVISION** |

Submitted October 7, 2014 — Decided January 2, 2015

Before Judges Messano, Ostrer and Hayden.

On appeal from the Superior Court of New Jersey, Law Division, Salem County, Docket No. L-95-08.

Holston, MacDonald, Uzdavinis, Ziegler & Lodge, attorneys for appellant/cross-respondent William R. Cobb (William F. Ziegler, on the brief).

John G. Hoffman, attorney for respondent/cross-appellant Alloway Township.

Michael M. Mulligan, Salem County Counsel, attorney for respondent/cross-appellant County of Salem.

John J. Hoffman, Acting Attorney General, attorney for respondent State of New Jersey Department of Environmental Protection (Lewis A. Scheindlin, Assistant Attorney General, of counsel; Daniel A. Greenhouse, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

MESSANO, P.J.A.D.

In this appeal we are called upon to construe provisions of the Safe Dam Act (the "SDA"), N.J.S.A. 58:4-1 to -14, a statute enacted upon the Legislature's specific finding "that the condition of many dams, lakes, and streams throughout the State has been deteriorating at an alarming rate due to a chronic lack of maintenance," and "that these conditions have led to the collapse of dams, polluted lakes, stream flooding and property damage to homes, businesses, lake communities and public utilities." N.J.S.A. 58:4-11. The SDA casts a "broad net" of liability, New Jersey Department of Environmental Protection v. Mercer County Soil Conservation District, 425 N.J. Super. 208, 221 (Ch. Div. 2009), so that its remedial purpose -- "to protect the public from the loss of life and property in the event a dam fails, regardless of whether it is privately or publicly owned" -- is served. Id. at 218.

Under the SDA, the Commissioner (the Commissioner) of the Department of Environmental Protection (DEP) is vested with sweeping regulatory and enforcement powers. See, e.g., N.J.S.A. 58:4-3 (permitting the Commissioner to request surveys and plans of dams and reservoirs); N.J.S.A. 58:4-4 (permitting the Commissioner to inspect any dam or reservoir); N.J.S.A. 58:4-5(b), (d) (granting the Commissioner broad remedial powers regarding unsafe dams, including the power to enter onto lands and remove the dam).

The SDA also imposes significant obligations upon "[a]n owner or person having control of a reservoir or dam." N.J.S.A. 58:4-5(a) (emphasis added). Such person must "[i]mplement all measures" required by the SDA or its accompanying regulations, provide any reports or information requested by DEP, and "[i]mplement any action ordered by the Commissioner" to rectify unsafe conditions. N.J.S.A. 58:4-5(a)(1)-(3).

The Commissioner is vested with broad enforcement powers whenever the SDA, "or any rule or regulation adopted, or permit or order issued pursuant thereto" is violated. N.J.S.A. 58:4-6(a). The remedies available to the Commissioner are numerous and include the right to file a summary civil action seeking injunctive relief, costs and civil penalties. N.J.S.A. 58:4-6(c).

In this case, DEP filed a civil enforcement action alleging violations of the SDA by defendants William R. Cobb, the County of Salem (the County) and Alloway Township (the Township) (collectively, defendants).[1] At issue was defendants' involvement with the Cobb's Mill Dam (the dam), a 288-foot earthen structure that forms a private lake, Cobb's Mill Lake, in the Township, and along the top of which runs a paved road, Cobb's Mill Road.

All parties moved for summary judgment. Chancery Judge Anne McDonnell granted DEP summary judgment on its amended verified complaint and denied defendants' motions. She entered an interlocutory order thereafter, apportioning the costs of compliance among the three defendants, sixty-five percent to the County, twenty-five percent to Cobb, and ten percent to the Township. After carefully considering the specific penalties requested by DEP, Judge McDonnell entered judgment in favor of DEP and ordered defendants to pay civil penalties totaling

---

[1] Since none of the appellants contest DEP's right to bring the action, or its entitlement to the relief accorded by the judge, we do not elaborate upon the factual and procedural history that preceded the commencement of the enforcement action.

$19,250, apportioned $7312.50 to the County, $7932.50 to Cobb, and $4005 to the Township.[2]

Cobb appeals and argues that the SDA does not apply to him, the "mere owner" of the lake bed without any authority to "'control, operate or maintain'" the dam in question. He argues that the County is solely responsible because it owns the right of way in which Cobb's Mill Road is situated.

In its cross-appeal, the County argues that material factual disputes regarding its contacts with and control of the dam should have foreclosed summary judgment. In particular, the County argues that the judge mistakenly found as a fact that title to the public right of way for Cobb's Mill Road vested with the County pursuant to a document recorded in the late 19th century.

In its cross-appeal, the Township argues that since it never "maintained, managed, operated or controlled the

---

[2] All civil penalties under the SDA are deposited in the Environmental Services Fund and appropriated to DEP for the removal of dams in the state. N.J.S.A. 58:4-6(j); N.J.A.C. 7:20-2.8. In a single sentence in its brief, the County states that it "cannot be determined to have the lion's share of responsibility for remedial activity or sanctions." It provides no legal argument why the judge mistakenly exercised her discretion in fixing and apportioning the penalty. An issue that is not briefed is deemed waived upon appeal. Fantis Foods v. N. River Ins. Co., 322 N.J. Super. 250, 266-67 (App. Div. 2000); Pressler & Verniero, Current N.J. Court Rules, comment 4 on R. 2:6-2 (2015).

structure," it cannot be responsible for any violations of the SDA. The Township further contends that since the County installed the structures appurtenant to the roadway, including a culvert for spill-off from the lake, the County is solely responsible for compliance with the SDA.

DEP urges us to affirm in all respects the orders entered by Judge McDonnell. It argues that because Cobb owns the lake and historically maintained the dam, the County owns the "bridge and culverts" that are part of the dam, and the Township owns and maintains the road, all defendants are responsible for the dam structure and any concomitant violations of the SDA.

We have considered these arguments in light of the record and applicable legal standards. We affirm.

I.

In reviewing a grant of summary judgment we "'employ the same standard . . . that governs the trial court.'" W.J.A. v. D.A., 210 N.J. 229, 237 (2012) (quoting Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010)). We first determine whether the moving party demonstrated there were no genuine disputes as to material facts. Atl. Mut. Ins. Co. v. Hillside Bottling Co., 387 N.J. Super. 224, 230 (App. Div.), certif. denied, 189 N.J. 104 (2006).

> [A] determination whether there exists a
> "genuine issue" of material fact that

> precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).]

We confine our review to the same record that existed before the motion judge. Ji v. Palmer, 333 N.J. Super. 451, 463-64 (App. Div. 2000).

We then decide "whether the motion judge's application of the law was correct." Atl. Mut. Ins. Co., supra, 387 N.J. Super. at 231. In this regard, "[w]e review the law de novo and owe no deference to the trial court . . . if [it has] wrongly interpreted a statute." Zabilowicz v. Kelsey, 200 N.J. 507, 512 (2009) (citing Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995)).

## A.

The motion record regarding defendants and their involvement with the dam, sometimes described as a bridge in the record, and its appurtenant structures was largely undisputed.

Cobb owns several parcels of land on Cobb's Mill Road, and he has held many public offices and appointed positions in the municipality and the County. The land has been in his family

since 1705, and Cobb's home and active saw mill are on parcels that are adjacent to the dam. During his deposition, Cobb testified that he owned the land beneath the dam and all the land on both sides of it, as well as all the land surrounding Cobb's Mill Lake. Additionally, in a 2000 letter to DEP, Cobb said that he was the owner of the dam.

Cobb surmised the dam was built by his ancestor Elisha Dilks, sometime in the early 1800s, and the structure was known for some time as the Dilks' Mill Dam. A recorded document from 1876, the import of which was in dispute, set courses for the construction of a road over the dam, indicating that at that time, the dam was owned by Calvin Dilks, Cobb's relative. A document in the record dated September 20, 1923, entitled "Dams in New Jersey — Reference Data," lists a business, "Thomas Cobb & Sons," as the owner of the dam, and states that the dam was rebuilt in 1903 by the County and Calvin Dilks. Cobb testified that his business, Cobb's Mill, LLC, is the successor to Thomas Cobb & Sons.

Cobb also testified that he has looked after the dam on an almost daily basis, operating the flood gates to control the water level in the lake, inspecting for cracks and, on occasion, making minor repairs. He mows the grass on both sides of the road and the lake-side embankment of the dam. On occasion, Cobb

8                                                          A-3835-12T3

plows snow from Cobb's Mill Road when the Township is too slow in responding.

In his deposition, Alloway Township public works director Kenneth McKelvey testified that the Township never maintained the dam. McKelvey believed that Cobb was responsible for opening and closing the dam's flood gates and "maintaining the land around the dam." McKelvey conceded, however, that the Township maintained Cobb's Mill Road and routinely patched potholes and applied sealant to the roadway. The Township also received grant money from the State to repave the road, which it last did in 2009.

Since at least the early twentieth century, the County has maintained portions of the dam. In 1923, the County placed "new caps and abutment planks on the dam," and then replaced the planks with steel pipes in 1932. In 1988, the Board of Chosen Freeholders passed a resolution remedying "a potentially dangerous situation" at the lake and approving "the installation of a . . . [c]ulvert with a new valve type structure [to] decrease the potential danger for downstream residents and County structures." The resulting structure, known as "Cobb's Mill Sluice," was installed about ten years after Cobb was forced to cut a trough through Cobb's Mill Road during a flood to prevent the road from entirely washing away.

As noted, the import of a January 1876 recorded document was disputed. The document records an "[a]pplication . . . made to the Court by Gerald Hitchner and others more than 10 Freeholders and residents of the County of Salem who think a public road to be necessary in the Township of Upper Alloway Creek in said County." The document sets forth a metes and bounds description for a proposed road, and reflects a recommended "assessment of damages to the . . . owners of the land taken for the laying out of the aforesaid road." The document further states that those sums would be paid by the "inhabitants" of the Township.

Cobb asserted that the document amounted to the creation of a public right-of-way over the dam, and the road, therefore, was owned by the County. The County steadfastly maintained that the document did not create any public right of way in favor of the County, but rather reflected the then-existing practice of permitting municipal residents to petition a court to lay a public road, thereby making Cobb's Mill Road a municipal, not County, road.

B.

After considering oral arguments of the parties on the various motions for summary judgment, in a written opinion Judge McDonnell concluded that all defendants were "owners or persons

10                                    A-3835-12T3

in control of a dam or reservoir within the meaning of the [SDA]." The judge reasoned:

> The County has accepted responsibility for the culvert over the years. The Township's road and the supporting embankments are the sole reason for the existence of the County's bridge/culvert. Both the County and the Township have control of the right-of-way and each has the right to remove structures. Because the County and the Township have control of the right-of-way and the structures within it, each is a person in control of the Cobb[']s Mill Dam.
>
> Mr. Cobb has legal and beneficial ownership of Cobb[']s Mill Pond. As the owner of the lake bed, Mr. Cobb is the owner of a reservoir within the meaning of the [SDA]. Further, Mr. Cobb has exercised control over the embankments and dam over the years. Mr. Cobb is an owner and a person in control over the dam or reservoir within the meaning of the [SDA].
>
> [T]he history and legal title of the dam itself are irrelevant, as the clear legislative purpose of the amendments is to cast a broad net of responsibility that includes owners and persons in control of a dam or reservoir.
>
> [(Citations omitted).]

After considering further oral arguments regarding the penalty to impose and how it should be apportioned, Judge McDonnell issued the order for judgment referenced above, together with a bench memorandum explaining the apportionment. She stayed payment of the penalties pending resolution of this appeal.

We first consider Cobb's argument that he cannot be responsible for violations of the SDA because, although he owned the land upon which the dam was situated, as well as the bed of the reservoir of water created by the dam, he lacked any control over the dam's structure or the roadway and was not responsible for maintaining them. Cobb relies primarily upon the Chancery Division's decision in Mercer County, supra, 425 N.J. Super. at 208.

In that case, DEP brought an enforcement action against private property owners upon whose lands two publicly-funded dams were constructed fifty years earlier, and which were subject to easements in favor of public entities providing access for maintenance of the dams. Id. at 215-217. DEP argued the defendants, as owners of the servient estates, were "owners" of the dam for purposes of the SDA. Id. at 217. The Chancery judge disagreed.

Interpreting the SDA's use of the phrase "owner or person having control of a reservoir or dam," the judge reasoned,

> There are two reasonable ways to interpret this language. One interpretation is to read the word "owner" separate from the phrase "person having control," in which case being an owner of the land could make you the owner of any improvements upon the land even if you had no control thereof. While an otherwise        perfectly        acceptable

interpretation under the common law, there are plenty of exceptions to which this do[es] not hold true, including utilities transmission wires, sewer pipes, and telephone poles; such items are more often than not located in or on private easements, but are not considered to be owned by the underlying property owner. The second possible interpretation, then, is to read the words "owner or persons having control" together as one phrase, such that either the owner who has control or another person having control would be responsible for the improvements upon real property. This construction implies that having control is a necessary element of being an "owner" under the statute.

[Id. at 220.]

The judge found further support in DEP's own regulation, which defines "[o]wner and/or operator" as "any person who owns, controls, operates, maintains, manages or proposes to construct a dam." N.J.A.C. 7:20-1.2.

The judge then listed four factors to be considered in determining whether a person was an "owner" for purposes of the SDA:

> (1) The nature and extent of any legal title to the underlying real property;
>
> (2) Whether the alleged owner constructed or participated in the structure's construction;
>
> (3) Whether the alleged owner controls, ever controlled, or participated in the control of the structure to more than a de minimis extent; and

A-3835-12T3

> (4) Whether the alleged owner has legal authority to exercise control of the structure.
>
> [Id. at 223.]

The judge held that the defendants were "not owners or persons having control of the subject dams or reservoirs as contemplated by the [SDA]," and he dismissed DEP's complaint. Id. at 223.

Cobb argues that application of these four factors to this case should have resulted in summary judgment in his favor. We need not consider the merits of that argument. We conclude that the court in Mercer County erred in construing the terms "owner or person having control of a reservoir or dam" as used in the SDA. In that limited regard, we respectfully overrule the decision.

Our analysis begins by noting that "[i]n statutory interpretation, a court's role 'is to determine and effectuate the Legislature's intent.'" State ex rel. K.O., 217 N.J. 83, 91 (2014) (quoting Allen v. V & A Bros., 208 N.J. 114, 127 (2011)). The first step in divining legislative intent is to consider the statute's plain language, Town of Kearny v. Brandt, 214 N.J. 76, 98 (2013), which "should be given its ordinary meaning and be construed in a common-sense manner." K.O., supra, 217 N.J. at 91. "[W]e must examine that language sensibly, in the context of the overall scheme in which the Legislature intended the

provision to operate[.]" N.J. Dep't of Envtl. Prot. v. Huber, 213 N.J. 338, 365 (2013). Additionally, we may consider "the interpretation and cognate enactments of the agency to which the Legislature has entrusted the statute's implementation." Ibid.

Courts are further guided by "the bedrock assumption that the Legislature did not use any unnecessary or meaningless language." Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 587 (2013) (quoting Patel v. N.J. Motor Vehicle Comm'n, 200 N.J. 413, 418-19 (2009)) (internal quotation marks omitted). We therefore presume that each of the statute's words means something and "'is not mere surplusage.'" Ibid. (quoting Cast Art Indus. v. KPMG LLP, 209 N.J. 208, 222 (2012)).

The SDA compels compliance from "[a]n owner or person having control of a reservoir or dam." N.J.S.A. 58:4-5(a) (emphasis added). A common sense reading of this language indicates there are four classes of people who are subject to the statute:  (1) dam owners; (2) reservoir owners; (3) those who control the dam; and (4) those who control the reservoir. It follows that if a party fits into any one of those

categories, the Commissioner may seek enforcement of the SDA against that person.[3]

The Chancery Division's construction of the statute in Mercer County implied that, to be brought under the enforcement umbrella of the SDA, a person must have more than legal ownership of a dam or reservoir. Such person also must have constructed or exercised some degree of control over the dam or reservoir, or have had the legal authority to exercise control. Mercer County, supra, 425 N.J. Super. at 223. The commonsense understanding of the word "owner" does not support that interpretation. See Black's Law Dictionary 1214 (9th ed. 2009) ("An owner may have complete property in the thing or may have parted with some interests in it (as by granting an easement or making a lease)."). Additionally, by interpreting the SDA's use of the term "owner" to necessarily include qualities similar to that of a "person in control," the court in Mercer County conflated two separate statutory terms, thereby rendering the phrase "owner" surplusage.

Moreover, even though it chose to use the disjunctive "or," the Legislature did not mean that either the "owner" or "the person in control," but not both, could be subject to DEP's

---

[3] DEP's regulations define "person" as "any individual, proprietorship, partnership, association, corporation, municipality, county or public agency." N.J.A.C. 7:20-1.2.

enforcement action.  See United States v. Woods, __ U.S. __, 134 S. Ct. 557, 567, 187 L. Ed. 2d 472, 484 (2013) ("[T]he operative terms are connected by the conjunction 'or.' While that can sometimes introduce an appositive -- a word or phrase that is synonymous with what precedes it ('Vienna or Wien,' 'Batman or the Caped Crusader') -- its ordinary use is almost always disjunctive, that is, the words it connects are to 'be given separate meanings.'" (quoting Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S. Ct. 2326, 2331, 60 L. Ed. 2d 931, 937 (1979))). Rather, the Legislature intended the SDA to have the broadest possible remedial application and envisioned enforcement actions against multiple responsible parties.  See Gallenthin Realty Dev., Inc. v. Borough of Paulsboro, 191 N.J. 344, 368 (2007) ("[I]t has long been settled that the disjunctive 'or' in a . . . statute may be construed as the conjunctive 'and' if to do so is consistent with the legislative intent." (quoting State v. Holland, 132 N.J. Super. 17, 24 (App. Div. 1975))).

The recent legislative history and language in other parts of the SDA make this clear.  In 2004, for example, Burlington County suffered severe flooding after several dams failed. See 39 N.J.R. 4894(a) (Nov. 19, 2007).  As a result, DEP concluded that it "lacked [the] necessary tools to efficiently enforce the provisions of the [SDA]."  Ibid.  The Legislature subsequently

broadened DEP's enforcement powers, noting its proposed amendment would "strengthen[] the DEP's authority to take action regarding failing and failed dams and to integrate these measures with the provisions of the [SDA]." Senate Environmental Committee, Statement to S. 1895 (Oct. 18, 2004). One of the sections enacted, N.J.S.A. 58:4-5(c), explicitly authorizes "allocation of the cost of removal among the liable owners or persons having control of the dam or reservoir whenever two or more owners or such persons are liable."[4] (Emphasis added).

Finally, our conclusion that the SDA permits enforcement of its provisions against both owners and persons in control of dams and reservoirs is consistent with DEP's interpretation of its authority. See Dep't of Envtl. Prot. and Energy v. Cnty of Cumberland, 94 N.J.A.R.2d 111, 119 (Dep't of Envtl. Prot. and

---

[4] We recognize that the Legislature has used similar, albeit slightly different language, at various points in the SDA. Compare N.J.S.A. 58:4-5(a) ("An owner or person having control of a reservoir . . . ." (emphasis added)), with N.J.S.A. 58:4-6(h) ("Each owner or person having control of a reservoir . . . ." (emphasis added)). We are convinced, however, that DEP's enforcement powers are not limited to a single "owner or person in control" of a dam or reservoir. Such an interpretation would be at odds with the remedial purpose of the statute. See A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 341 ("[W]hen a literal interpretation of individual statutory terms or provisions would lead to results inconsistent with the overall purpose of the statute, that interpretation should be rejected." (internal quotation marks omitted)), certif. denied, 200 N.J. 210 (2009).

Energy) ("By nature of a party's decision to engage in either ownership or control of a dam, such party incurs such statutorily established liabilities.").

In this case, Judge McDonnell properly found that Cobb was within the reach of the SDA's regulatory and enforcement powers. He admitted being the owner of the dam, as well as the reservoir created by the dam. See N.J.A.C. 7:20-1.2 (defining reservoir as "any impoundment or any potential impoundment that will be created by a dam, dike or levee"). Moreover, Cobb has historically exerted some level of control over the reservoir by admittedly operating the spillway. For all these reasons, we affirm the grant of summary judgment and the amount of the judgment entered against Cobb.

### III.

The Township argues that, because it "never maintained, managed, operated or controlled the structure . . . [it] cannot be held responsible under the [SDA]." We disagree.

DEP's regulations define a "dam" as "any artificial dike, levee or other barrier, together with appurtenant works, which is constructed for the purpose of impounding water." N.J.A.C. 7:20-1.2 (emphasis added). The word "appurtenant" means "[a]nnexed to a more important thing." Black's Law Dictionary 118 (9th ed. 2009). In this case, Cobb's Mill Road is a work

"appurtenant" to the preexisting Cobb's Mill Dam, the entire length of which the road traverses. The issue then becomes whether the Township's routine work on the road brings it within the SDA's regulatory scheme, i.e., is the Township a "person[] having control of a reservoir or dam"?

Although the case is not on all fours, we find persuasive the Law Division's decision in Braun v. Twp. of Mantua, 270 N.J. Super. 404 (Law Div. 1993). There, the court considered whether Mantua Township ("Mantua"), which had removed snow, cleared weeds, replaced gravel and generally maintained a road traversing a dam, could be compelled to make repairs when the dam collapsed due to heavy rains. Id. at 406-08. Recognizing that the roadway and dam were "interrelated," the court reasoned:

> Although the legally required duty of Mantua may only encompass a duty to provide safe passage for users of the road, that safe passage can only be assured if the dam itself is secure. The most exhaustive efforts by Mantua to maintain and control the roadway, which it provides for public use and accommodation, would be for naught, unless the underpinning of the road, in this instance the dam, is also vigilantly and safely maintained.
>
> [Id. at 411.]

The Court also reasoned that under the SDA, the owners of the dam -- owners of the adjoining properties -- were also responsible. Id. at 411-12.

In this case, it is undisputed that the Township regularly maintained Cobb's Mill Road, and that the road had been and remained an integral part of Cobb's Mill Dam. In maintaining the road, the Township exercised some level of control over one of the dam's appurtenant structures. We affirm the grant of summary judgment against the Township, as well as the amount of penalties assessed against it.

The County argues Judge McDonnell erroneously found that "it [had taken] title of a public right of way over Cobb's Mill Dam . . . in the late 19th Century," and that there were material factual issues in dispute regarding the County's contacts with and historic control of the dam. The argument lacks sufficient merit to warrant extensive discussion. R. 2:11-3(e)(1)(E).

We need not decide whether the disputed 1876 recorded instrument created a public right-of-way over the dam in favor of the County or the Township. It is undisputed that the County assisted in reconstructing the dam in 1923, that it made improvements to the dam in 1932, and that in 1988, it installed a culvert to "decrease the potential danger for downstream

residents and County structures." These acts alone are sufficient to render the County subject to the Commissioner's enforcement powers under the SDA as "a person in control" of the dam.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22                                                          A-3835-12T3