# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-5003-18T3
                 A-5004-18T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

       Plaintiff-Respondent,

v.

Y.R.J. and J.T.,

       Defendants-Appellants,

and

T.D.S.,

       Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF A.A.-M.S.
and J.F.T., Minors.

_____

Submitted September 15, 2020 – Decided  September 23, 2020

Before Judges Gilson and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FG-11-0053-18.

Joseph E. Krakora, Public Defender, attorney for appellant Y.R.J. (Robyn A. Veasy, Deputy Public Defender, of counsel; Albert M. Afonso, Designated Counsel, on the briefs).

Joseph E. Krakora, Public Defender, attorney for appellant J.T. (Robyn A. Veasy, Deputy Public Defender, of counsel; Daniel DiLella, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae, Assistant Attorney General, of counsel; John Tolleris, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Cory H. Cassar, Designated Counsel, on the brief).

PER CURIAM

In these consolidated appeals, Y.R.J. (Yolanda) contests the Family Part's final judgment of guardianship terminating her parental rights to A.A.-M.S. (Asia), who is ten years old, and J.F.T. (Judy), who is six years old; J.T. (Jed) contests the aspect of the judgment terminating his parental rights to Judy.[1]

---

[1] Asia's father does not appeal. We use fictitious names for ease of reading and to protect the identities of the parties. R. 1:38-3(d)(12).

Yolanda argues that the Division of Child Protection and Permanency, due to its experts' inconsistent diagnoses of her, failed to formulate an appropriate plan of services and, consequently, failed to make reasonable efforts towards reunification. She contends that because of that failure, the Division could not meet its burden of proof as to the other prongs of the "best interests of the child" test under N.J.S.A. 30:4C-15.1(a). Jed argues that the Division did not prove any of the prongs of that statutory test by clear and convincing evidence. We disagree and affirm.

The scope of an appellate court's review of a trial court's decision to terminate parental rights is limited. N. J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007). "Appellate courts must defer to a trial judge's findings of fact if supported by adequate, substantial, and credible evidence in the record." Ibid. Reviewing courts "accord deference to fact findings of the family court because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N. J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012).

"Parents have a constitutional right to raise their children." Id. at 447. That right is not absolute. N. J. Div. of Youth & Family Servs. v. R.G., 217 N.J.

527, 553 (2014). At times, a parent's interest must yield to the State's obligation to protect children "whose vulnerable lives or psychological well-being may have been harmed or may be seriously endangered by a neglectful or abusive parent." F.M., 211 N.J. at 447.

To "achieve the appropriate balance between parental rights and the State's parens patriae responsibility," N. J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 280 (2007), the Legislature enacted a test for determining when a parent's rights must be terminated in a child's best interests. N.J.S.A. 30:4C-15.1(a) requires that the Division prove by clear and convincing evidence the following four prongs:

> (1) The child's safety, health or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm . . .;
>
> (3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.

A-5003-18T3

Those fact-sensitive factors "'overlap with one another to provide a comprehensive standard that identifies a child's best interests.'" G.L., 191 N.J. at 606-07 (quoting In re Guardianship of K.H.O., 161 N.J. 337, 348 (1999)).

In his detailed seventy-two-page written opinion, Judge Wayne J. Forrest found that the Division had demonstrated by clear and convincing evidence that all four prongs supported termination of defendants' parental rights. Judge Forrest based his opinion on evidence adduced during a thirteen-day trial, which included the testimony of Division witnesses, the children's resource mother, a detective of the local police department, the Division's psychological expert witness, other therapists or counselors, a defense witness, and Yolanda's psychology expert witness. The judge did not find her expert witness to be credible. Yolanda and Jed attended the trial sporadically and did not testify. The law guardians for Asia and Judy supported the Division's position.

We summarize the salient facts. The Division first removed Asia from Yolanda's custody on October 5, 2012, when it found Asia and her older sister unsupervised at Yolanda's home, which was in a deplorable condition. Yolanda regained custody in December 2013. About three months later, Asia and her older sister were removed from Yolanda's custody because the older sister had reported that Yolanda often left them home alone and hit them. In 2015,

Yolanda regained custody of Asia, but the court ordered her not to allow her older son, who had been accused of having sexual contact with another daughter, to be unsupervised around Asia or Judy. Four months later, the Division removed Asia and Judy from Yolanda's custody because Yolanda had violated the order by allowing her older son to have unsupervised contact with Asia and Judy.

As to the first prong, the judge determined that Yolanda had failed to comply with court-ordered services, to remediate her mental health issues, to visit consistently her children, and to accept responsibility for her involvement with the Division. He also found that Yolanda's visits with Asia had a negative effect on Asia's behavior. The judge determined that Jed had not complied with court-ordered services and had inconsistent visitation with Judy and that he was at risk of re-engaging in criminal behavior given his lengthy criminal history. He concluded that Asia's and Judy's safety, health, and development have been and will continue to be endangered by a relationship with their biological parents and that that harm has had and likely will continue to have a deleterious effect on Asia and Judy.

As to the second prong, the judge determined that Yolanda has had children, including Asia, removed from her care on multiple occasions for,

among other reasons, her inadequate supervision of her children, but refuses to take responsibility for her actions. He found that she had not complied with court-ordered services, had not visited consistently with Asia or Judy, and had refused to provide the Division with proof of purported employment to establish her claim of maintaining a stable residence. The judge determined that Jed's incarcerations minimized his presence in Judy's life. He found that even since Jed's release from prison, he had not had consistent visitation with her, had not complied with services, had not resolved his alcohol-abuse issues, and had continued to engage in criminal behavior through domestic-violence incidents with Yolanda. The judge concluded that Yolanda and Jed are unwilling or unable to eliminate the harm facing their children or to provide a stable and safe home for them. He also concluded that delay of permanent placement would add to that harm.

As to the third prong, Judge Forrest found that the Division has made numerous and continuous efforts to provide services to Yolanda and Jed to enable them to reunify with their children, and he detailed those efforts in a seven-page section of his opinion. The judge concluded that the Division had established that it made reasonable efforts to provide services, but that Yolanda and Jed had failed to avail themselves sufficiently of the Division's offered

7

services. He also concluded that Yolanda and Jed had not demonstrated the necessary stability or commitment to care for their children and that alternatives to termination of parental rights were not viable.

As to the fourth prong, the judge found that there was no realistic likelihood that Yolanda or Jed will be able to care safely and appropriately for their children. He cited Yolanda's unaddressed mental health issues, her inability to take responsibility for her past inappropriate behavior and neglect in caring for Asia and Judy, and her inconsistent visits, causing instability in her daughters' lives. He noted Jed's unaddressed alcohol issues, inconsistent visits, and uncompleted services. The judge determined that Asia and Judy were doing well with their resource mother, who intends to adopt them, and that Asia's behavioral issues likely stem from her visits with Yolanda.

In her appeal, Yolanda focuses on the third prong of the statutory test. She complains that during the Division's seven-year involvement with her children, the Division's experts evaluated her seven times, resulting in nineteen different diagnoses. She compares those results to the finding of her expert, whom the court found not to be credible, of no mental health diagnosis. She does not identify any services that the Division should have provided but did not provide. Based on her expert's finding of no mental health diagnosis, the

Division would not have had to provide any mental health services. She does not describe as inappropriate any particular service the Division offered. She does not contest the judge's finding that she failed to take sufficient advantage of those services and does not offer an explanation as to why.

The efforts provided by the Division under the third prong of the statutory test do not have to be successful. N. J. Div. of Youth & Family Servs. v. A.G., 344 N.J. Super. 418, 442 (App. Div. 2001). "The diligence of [the Division's] efforts on behalf of a parent is not measured by their success." In re Guardianship of DMH, 161 N.J. 365, 393 (1999). The efforts also do not have to be perfect; they have to be reasonable. The Legislature defined "reasonable efforts" as meaning "attempts by an agency authorized by the [D]ivision to assist the parents in remedying the circumstances and conditions that led to the placement of the child and in reinforcing the family structure . . ." N.J.S.A. 30:4C-15.1(c). The court must assess those efforts "against the standard of adequacy in light of all the circumstances of a given case. Consistent efforts to maintain and support the parent-child bond are central to the court's determination." DMH, 161 N.J. at 393. A court's inquiry into the reasonableness of the Division's efforts also includes a consideration of

"whether a parent actively participated in the reunification effort." N.J. Div. of Youth & Family Servs. v. L.J.D., 428 N.J. Super. 451, 488 (App. Div. 2012).

In finding Yolanda's expert not to be credible, Yolanda's participation in the reunification to be inconsistent, and the Division's efforts, which included case plans, parenting classes, individual therapy, therapeutic visitation services, substance-abuse evaluations, domestic-violence counseling services, transportation for visitation, other counseling services, and assistance with welfare, medical insurance, daycare, and after-school care services, to be reasonable, Judge Forrest relied on substantial credible evidence in the record.

Yolanda does not contest the court's specific findings of fact and interpretation of the law regarding the other prongs of the statutory test.[2] Yolanda premises her arguments as to the second and fourth prongs on her third-prong argument. Having found that argument unconvincing, we similarly reject her arguments on the other prongs.

Jed centers his appeal on the court's purported improper focus on his incarcerations. In making that argument, Jed overlooks the many other factors

---

[2] Yolanda does not dispute expressly the trial court's first-prong determination with respect to either child. Accordingly, any challenge by Yolanda to the trial court's first-prong finding is considered waived on appeal. See, e.g., N.J. Dep't of Envtl. Prot. v. Alloway Twp., 438 N.J. Super. 501, 506 n.2 (App. Div. 2015) (holding that an issue not briefed is deemed waived on appeal).

considered by the court, including Jed's failure to consistently participate in court-ordered services, his inconsistent post-incarceration visitation with Judy, the harm that that inconsistency causes Judy, his domestic-violence incidents with Yolanda, his inability or unwillingness to provide Judy with a safe and stable home, and his failure to maintain sobriety.[3]

Jed likens himself to the defendant father in R.G., 217 N.J. 527. That comparison does not support Jed's argument. Unlike Jed, the defendant father in R.G. had been a part of his daughter's life since her birth, changing her diapers and taking her to doctors' appointments before his incarceration. Id. at 536. While in prison, he called his daughter and wrote to her. Id. at 537. During his time in a halfway program, he spoke to his daughter nearly every day. Id. at 540. He made efforts to visit her and wrote her monthly and on birthdays and holidays. Id. at 540-41. Jed offers no evidence that he[4] attempted to facilitate calls or visits with Judy or that he wrote to her during or after his incarceration. He demonstrated his disinterest in reuniting with Judy when, contrary to specific

---

[3] Jed's effort to minimize the domestic-violence incidents with Yolanda and his alcohol abuse is not supported by the record.

[4] That Yolanda brought Judy with her when she visited Jed in prison or that she called Jed when she was with Judy does not constitute effort by Jed to create and maintain a parental relationship with Judy.

instructions he had received from a Division caseworker, he failed to contact the Division after his release to schedule supervised visits with Judy and allowed months to elapse before a chance encounter with a Division caseworker in Yolanda's apartment.  See DMH, 161 N.J. at 373.  Unlike the defendant father in R.G., Jed was given an opportunity to be "reintegrated into society and . . . [to] strengthen his relationship with [his child]."  217 N.J. at 561.  By failing to comply with court-ordered services, failing to visit consistently his daughter, failing to maintain his sobriety, and becoming embroiled in domestic violence incidents, he failed to embrace that opportunity.

All of the trial judge's findings were supported by evidence the judge found to be clear, convincing, and credible.  His findings are entitled to our deference.  F.M., 211 N.J. at 448-49.  We, therefore, affirm substantially for the reasons set forth by Judge Forrest in his well-reasoned and thorough written opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5003-18T3