NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0385-15T3

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

RICHARD BARGE,

 Defendant-Appellant.
______________________________

 Submitted February 28, 2017 – Decided July 31, 2017

 Before Judges Messano and Suter.

 On appeal from Superior Court of New Jersey,
 Law Division, Camden County, Indictment No.
 08-06-1851.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Steven M. Gilson, Designated
 Counsel, on the brief).

 Mary Eva Colalillo, Camden County Prosecutor,
 attorney for respondent (Nancy P. Scharff,
 Assistant Prosecutor, of counsel and on the
 brief).

PER CURIAM

 Defendant Richard Barge appeals the order denying his

petition for post-conviction relief (PCR) without an evidentiary

hearing. We affirm.
 In 2012, defendant was convicted by a jury of first-degree

murder, N.J.S.A. 2C:11-3(a)(1),(2), and other charges1 in the

shooting death of Nicholas Syders on Thanksgiving night in 2007

as Syders sat in his car with passenger, Steven Goldsboro, in the

parking lot of the Off Broadway Lounge in Camden. Defendant was

sentenced to fifty-seven years in prison with a period of parole

ineligibility. Defendant appealed the convictions and sentence

in 2012. We affirmed and the Supreme Court denied his petition

for certification. State v. Barge, No. A-4970-09 (App. Div. Mar.

27, 2013), certif. denied, 216 N.J. 7 (2013).

 We quote from our unreported opinion to provide context to

the issues on appeal here.

 Goldsboro told the police that the assailant
 was unknown to him but subsequently admitted
 he knew the identity of the shooter.

 . . . .

 Goldsboro gave a taped statement at the
 Prosecutor's Office in which he indicated that
 the person who shot Syders on Thanksgiving
 night was the man he knew as "Rich" who had
 been in a fight with Syders at the Nice Little
 Bar weeks earlier.

 . . . .

1
 These include second-degree possession of a weapon, handgun, for
an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); third-degree unlawful
possession of a weapon, handgun, N.J.S.A. 2C:39-5(b); and second-
degree certain person not to have weapons, N.J.S.A. 2C:39-7(b)(1).

 2 A-0385-15T3
That summer, months after he provided this
statement, Goldsboro received threats
directed not only at him but at his family.

 . . . .

Goldsboro signed a written statement on that
date, July 7, 2008, indicating that he "saw
the shooter that killed Nicholas and it was
not Richard Barge."

Approximately one year [later] Goldsboro
. . . indicated that this statement was not
true; he reiterated that it was in fact
defendant who shot Syders on Thanksgiving
night.

 . . . .

At trial, . . . Goldsboro explained that he
did not initially identify defendant because
he was afraid for himself and the safety of
his family.

Two inmates housed with defendant at the
Camden County Jail also testified at trial.

 . . . .

Both [Jamal] Gibbs and [Andre] Munday admitted
they hoped their cooperation would reduce the
sentences they would receive.

 . . . .

According to Gibbs, defendant communicated to
him that he approached or "checked" Nick
Syders at a bar and that the two of them "had
words" and it got "heated." When defendant
was later shot, defendant believed that "it
was Nick [Syders's] work." On Thanksgiving,
somebody called defendant and told him that
Nick was at the Off Broadway bar downtown.
Defendant went there and "got at" Nick when
he was in a car . . . . Gibbs explained that

 3 A-0385-15T3
"you don't want to come out and say I killed
him. You want to say I got at him."

 . . . .

Munday testified that . . . [d]efendant ran
up to the car and as soon as Nick started his
engine, "Rich shot him."

 . . . .

Defendant testified and denied he killed
Nicholas Syders or had any knowledge of the
crime.

 . . . .

In addition to defendant, three witnesses
testified on defendant's behalf . . . . All
three women testified that defendant had
Thanksgiving dinner with them at Vanessa's
apartment at approximately 10:00 p.m. that
night and that, except for leaving for a few
minutes at approximately 6:00 or 6:30 p.m. to
drive his son home, defendant was at the
apartment from the late afternoon until
approximately 11:00 p.m. or midnight.

 . . . .

[Defendant] stated that Gibbs and Munday were
lying when they testified that he admitted his
involvement in Syders's death and maintained
that he had "no idea" what all three of them
were "talking about."

Defendant acknowledged that he . . . [was]
at the Nice Little Bar . . . approximately
three weeks before the homicide . . . . He
admitted that he and Nick had "words" but
denied it ever got physical. Defendant also
testified that he was shot after the incident
with Nick Syders at the Nice Little Bar.

[Barge, supra, No. A-4970-09 (slip op. at 2-9).]

 4 A-0385-15T3
 In 2014, defendant filed a pro se PCR petition raising

ineffective assistance because of his trial counsel's alleged

failure to investigate an eyewitness to the shooting and to raise

at trial instances of "prosecutorial misconduct" involving the

introduction of gang activity evidence. After PCR counsel was

appointed, defendant submitted a certification raising other

issues and, of those, defendant pursues on appeal the alleged

failure to request a limiting instruction regarding his

altercation with Syders three weeks earlier.2

2
 Defendant does not pursue the prosecutorial misconduct claim.
Defendant's PCR petition additionally claimed his counsel was not
familiar with discovery because he was not aware defendant was
shot after the incident with Syders, his sentence was excessive
because mitigating factor eleven should have been considered, and
there were cumulative errors. Defendant supported the failure to
investigate claim with a certification from Terrance Damon, dated
February 20, 2015, that contended Andre Munday and Jamal Gibbs are
"'jailhouse rats' and they have reputations for getting favors
from authorities for providing information about inmates' cases."
In 2010, while trial was in progress, defendant submitted a 2010
certification from Damon "in which he stated that Gibbs admitted
to him that he was reviewing discovery of inmates and then lying
. . . to get a better sentence." Barge, supra, No. A-4970-09
(slip op. at 23). We affirmed the trial court's rejection of that
claim as a basis for a new trial. Id. (slip op. at 24).

Judge Blue addressed all of the issues defendant raised in his
PCR. He has only appealed two issues, and thus he has waived the
others. See N.J. Dep't of Envtl. Prot. v. Alloway Twp., 438 N.J.
Super. 501, 506 n.2 (App. Div.) ("An issue that is not briefed is
deemed waived upon appeal." (citations omitted)), certif. denied,
222 N.J. 17 (2015).

 5 A-0385-15T3
 Defendant submitted a May 7, 2015 certification from James

Jordan III (Jordan) in support of his PCR petition. Jordan claimed

that he was working at the Off Broadway Lounge as a doorman on

Thanksgiving 2007, the night Syders was killed, and witnessed "a

man fire[] shots into a vehicle outside of the bar." Jordan

certified that he "had seen Richard Barge come in and out of the

bar, as a regular customer, for a couple of years before this

incident," and that "[t]he shooter was not Richard Barge." Jordan

claimed in his certification that the reason he did not come

forward with this information or "talk[] to anyone about the

incident" was that he "did not want to get involved in the

aftermath of it all and lose my job."

 Judge Gwendolyn Blue denied defendant's PCR petition on May

8, 2015, following oral argument.3 In her thorough oral opinion,

Judge Blue rejected defendant's claim that his trial counsel's

investigation was inadequate.

 There is absolutely no certification that
 James Jordan's name was given to defense
 counsel for investigation in this case. And
 I draw a reasonable inference that the reasons
 why it wasn't given to defense counsel is
 because no one knew about James Jordan as a
 witness.

3
 We limit our discussion to the issues defendant has raised on
appeal.

 6 A-0385-15T3
 James Jordan himself says, I never talked
 to anyone about the incident, because I did
 not want to get involved.

 There's no certification that defense
 counsel did not go out to that bar to conduct
 an investigation.

 . . . .

 As there is absolutely nothing that shows
 the [c]ourt that defense counsel failed to
 conduct an investigation in this matter,
 there's nothing that supports it.

 And for the record, I want to make it
 clear what my distinction is.

 What you have here is something from
 James Jordan that may be considered newly-
 discovered evidence, but that's not what a
 Post-Conviction Relief [a]pplication is.

 Judge Blue also rejected defendant's claim that trial counsel

erred by not requesting a limiting instruction under N.J.R.E.

404(b) following testimony about the fight three weeks earlier.

Judge Blue found "[t]here is absolutely no showing that the State

used this evidence to show anything other than possibly motive or

intent for the shooting[,]" and that defendant "himself[] took the

stand and testified . . . that he and the victim had some type of

argument prior to the victim's death." Accordingly, the judge

found that defendant "failed to show the [c]ourt how such an

instruction would have changed the outcome of the case."

 7 A-0385-15T3
 Defendant appeals the May 8, 2015 order denying his PCR

petition by raising the following issues:

 THIS MATTER MUST BE REMANDED FOR AN
 EVIDENTIARY HEARING BECAUSE DEFENDANT
 ESTABLISHED A PRIMA FACIE CASE OF TRIAL
 COUNSEL'S INEFFECTIVENESS.

 A. Trial Counsel Failed To Conduct
 An Adequate Investigation, Which
 Would Have Resulted In The Testimony
 Of An Exculpatory Witness.

 B. Trial Counsel Failed To Request
 A Limiting Instruction Regarding A
 Prior Altercation Between Defendant
 And The Victim.

We are not persuaded by defendant's arguments and affirm.

 The standard for determining whether counsel's performance

was ineffective for purposes of the Sixth Amendment was formulated

in Strickland v. Washington, 466 U.S. 668, l04 S. Ct. 2052, 80 L.

Ed. 2d 674 (1984), and adopted by our Supreme Court in State v.

Fritz, l05 N.J. 42 (l987). In order to prevail on an ineffective

assistance of counsel claim, defendant must meet a two-prong test

by establishing that: (l) counsel's performance was deficient and

he or she made errors that were so egregious that counsel was not

functioning effectively as guaranteed by the Sixth Amendment to

the United States Constitution; and (2) the defect in performance

prejudiced defendant's rights to a fair trial such that there

exists "a reasonable probability that, but for counsel's

 8 A-0385-15T3
unprofessional errors, the result of the proceeding would have

been different." Strickland, supra, 466 U.S. at 687, 694, l04 S.

Ct. at 2064, 2068, 80 L. Ed. 2d at 693, 698.

 "[W]hen a petitioner claims his trial attorney inadequately

investigated his case, he must assert the facts an investigation

would have revealed, supported by affidavits or certifications

based upon the personal knowledge of the affiant or the person

making the certification." State v. Porter, 216 N.J. 343, 353

(2013) (alteration in original) (quoting State v. Cummings, 321

N.J. Super. 154, 170 (App. Div.), certif. denied, 162 N.J. 199

(1999)).

 Defendant's argument about lack of investigation is that

because an alleged eyewitness has now stepped forward, there must

have been a failure by counsel to investigate. Because defendant

had no evidence to connect these two concepts, we agree that the

PCR court properly rejected this non sequitur. We assess the

reasonableness of an attorney's performance "on the facts of the

particular case, viewed as of the time of counsel's conduct."

Strickland, supra, 466 U.S. at 690, 104 S. Ct. at 2066, 80 L. Ed.

2d at 695. All that defendant showed was that now there is an

alleged eyewitness who did not want to step forward earlier.

Although this information might form the subject of an application

for a new trial, see State v. Ways, 180 N.J. 171, 187 (2004), we

 9 A-0385-15T3
agree with the PCR court that under the Strickland/Fritz analysis,

it did not prove counsel's performance was deficient.

 Defendant contends his trial counsel erred by not requesting

a limiting instruction under N.J.R.E. 404(b) regarding evidence

of defendant's earlier confrontation with Syders. We agree with

the PCR court that the lack of a limiting instruction did not

warrant post-conviction relief.

 N.J.R.E. 404(b) provides,

 [e]xcept as otherwise provided by [N.J.R.E.]
 608(b), evidence of other crimes, wrongs, or
 acts is not admissible to prove the
 disposition of a person in order to show that
 such person acted in conformity therewith.
 Such evidence may be admitted for other
 purposes, such as proof of motive,
 opportunity, intent, preparation, plan,
 knowledge, identity or absence of mistake or
 accident when such matters are relevant to a
 material issue in dispute.

 [(Emphasis added).]

 At trial, both sides presented evidence about the earlier

confrontation as it related to defendant's possible motive.

Defendant contended the confrontation was minor. The lack of a

request for a limiting instruction reasonably could have been part

of the strategy at trial to minimize the incident consistent with

defendant's theory of the case and not an error by counsel that

"fell below an objective standard of reasonableness." Strickland,

supra, 466 U.S. at 688, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693.

 10 A-0385-15T3
"[A] court must indulge a strong presumption that counsel's conduct

falls well within the wide range of reasonable professional

assistance, that is, the defendant must overcome the presumption

that, under the circumstances, the challenged action 'might be

considered sound trial strategy.'" Id. at 689, 104 S. Ct. at

2065, 80 L. Ed. 2d at 694-95. See also State v. Chew, 179 N.J.

186, 217 (2004) ("[I]f counsel makes a thorough investigation of

the law and facts and considers all likely options, counsel's

trial strategy is 'virtually unchallengeable.'") (citation

omitted)). Moreover, if an instruction were given, we agree with

Judge Blue that defendant did not show there was "a reasonable

probability that . . . the result of the proceeding would have

been different." See Strickland, supra, 466 U.S. at 694, 104 S.

Ct. at 2068, 80 L. Ed. 2d at 698.

 We are satisfied from our review of the record that defendant

failed to make a prima facie showing of ineffectiveness of trial

counsel within the Strickland/Fritz test. Accordingly, the PCR

court correctly concluded that an evidentiary hearing was not

warranted. See State v. Preciose, 129 N.J. 451, 462-63 (1992).

 Affirmed.

 11 A-0385-15T3