**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0709-22

LES PANEK and
MALGORZATA PANEK,

    Plaintiffs-Appellants,

v.

JOSEPH ZECCA and
DONNA ZECCA,

    Defendants-Respondents,

_____

Submitted January 18, 2024 – Decided January 22, 2025

Before Judges Gummer and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1875-19.

Eastwood Scandariato & Steinberg, attorneys for appellants (Peter A. Scandariato, on the brief).

Nicolette G. DeSimone, attorney for respondents.

The opinion of the court was delivered by

GUMMER, J.A.D.

In this dispute between neighbors, the court, after conducting a bench trial, entered a judgment dismissing with prejudice the complaint of plaintiffs Les Panek and Malgorzata Panek and awarding on the counterclaim of defendants Joseph Zecca and Donna Zecca a monetary amount in defendants' favor to be "used to remove debris and properly grade the subject area."[1] Plaintiffs appeal the aspect of the judgment regarding the counterclaim. Because sufficient credible evidence in the record supports the trial court's findings, we affirm.

I.

Plaintiffs, who own property in East Hanover, filed a lawsuit against defendants, who own adjacent property. Plaintiffs alleged Joseph excavated or caused to be excavated a portion of defendants' property located immediately behind plaintiffs' property in May 2018. According to plaintiffs, that excavation deprived their property of "the natural lateral support" it had from defendants' property, which caused plaintiffs' property to "collapse[]," damaging their swimming pool and patio. Plaintiffs pleaded two causes of action, claiming defendants had breached a purported "duty . . . to supply adequate artificial

---

[1] Given their common last names, we use first names to refer to the individual parties for clarity. In doing so, we mean no disrespect.

A-0709-22

support at [their] own expense" and had been "negligent in the excavation of the rear of their property."

Defendants counterclaimed, asserting plaintiffs knew their pool and patio had been constructed partially on defendants' land and that pursuant to a March 6, 2014 stipulation of settlement of a lawsuit brought against Les by the State of New Jersey on behalf of the Township of East Hanover, Les was to either remove the parts of that construction that were on defendants' property and restore defendants' property to its prior condition or purchase or obtain an easement over that portion of defendants' property on which the pool and patio had been built. According to defendants, plaintiffs did not purchase the property or obtain the easement and failed to remove their construction debris from defendants' property. Defendants pleaded four causes of action against plaintiffs: unlawful encroachment, trespass to land, private nuisance, and negligence in the construction of the pool and patio. Defendants also filed a claim against the township, which the court later dismissed for lack of prosecution.

The court conducted a two-day bench trial. Les testified. According to Les, plaintiffs purchased their property in 2013. The property contained an inground pool and a lap pool. He admitted plaintiffs knew when they purchased

the property that the lap pool in part was on defendants' property. Les stated he initially intended to purchase from defendants the portion of their property containing the lap pool and restore the lap pool, but the parties could not agree on a purchase price. He testified that after plaintiffs' "closing and when [the parties] did not agree on a purchase price of the property, [Joseph] took the bulldozer and basically graded the part of the lap pool that was on his property and stacked up all of the concrete and debris . . . ."

Les testified about several exhibits that were admitted into evidence, including a May 2018 application for a grading permit Joseph had submitted to the township and that had been executed by the township engineer. He confirmed the stated purpose of the permit was "[t]o clean up and restore the property left by neighbor pulled concrete, PVC pipe, et cetera, to grade to original grading by the DEP" and admitted he was the "neighbor" referenced in that document. He described his efforts to remove some but not all of the remnants of the lap pool on defendants' property and acknowledged debris from the lap pool remained present outside of plaintiffs' fence and on defendants' property after plaintiffs finished renovating their inground pool.

Les admitted he was cited for certain violations and had signed the March 6, 2014 stipulation of settlement that resolved those violations. According to

the stipulation, which was admitted into evidence, the township had served Les with two complaints. The complaints contained allegations Les had violated East Hanover Ordinances 119A-5 and 95-65(B)(2) by "owning and/or purchasing and transferring [the property] without having first correct[ed] certain violations within a reasonable time after notice of said violations . . . and without obtaining a Continued Certificate of Compliance for same" and by "constructing, altering, using or occupying the [p]roperty, . . . without first obtaining a valid zoning permit . . . ." The stipulation identified certain aspects of plaintiffs' property as causing those violations, including, among other things, plaintiffs' inground pool, patio, fencing, and lap pool, which was "adjacent to the inground pool[,] [wa]s in disrepair, constitute[d] a nuisance and encroach[ed] on the neighboring land-owners property in violation of [East Hanover, N.J.,] Ordinance 95-45." As memorialized in the stipulation, to resolve the complaints, Les agreed he would "at his sole cost and expense" "remove" and "fill in" the lap pool.

Joseph also testified. According to Joseph, the lap pool was still on defendants' property when plaintiffs purchased their property. He testified he had been cited with violations regarding the remnants of the lap pool and about a transcript, which was admitted into evidence, from a municipal-court

proceeding regarding those citations. Joseph stated that, as part of their resolution, he had agreed to give Les sixty days to remove the debris from his property. According to Joseph, he had represented to the municipal court Les could "go on [defendants'] property to remove the dirt, debris, pool, everything that's there and restore it back to natural grade," but Les failed to remove it.

Joseph testified about and described photos depicting what had been "left behind" on his property after plaintiffs renovated the inground pool and had a new fence installed, including "light posts, underground lighting, [and] fill dirt. There's about probably 70 yards of stone that was under here buried. Additional concrete that's buried in the old pool all on my side of the fence." According to Joseph, he gave Les "verbal and written permission through the town. So he could still go on [defendants'] property, remove all of the debris, [and] remove the dirt . . . ." Joseph acknowledged Les "didn't dump . . . the dirt there" but asserted plaintiffs had "bought the property with it there" and were required to "[r]estore [the] property to its original" condition.

Plaintiffs also called as witnesses: a fencing-company employee, who had prepared an estimate for a new fence on plaintiffs' property, and a construction-company owner, who had prepared an estimate for the construction of a retaining wall.

6

Anthony Trapasso testified on behalf of defendants.[2] He had prepared an estimate charging $74,250 to "[r]emove and dispose of 285 yards of soil, 27 yards of stone, electrical conduit, [PVC] piping, metal framing, all concrete footings and slabs, fencing from previous pool area. Regrade all disturbed areas to previous elevations."

After hearing counsels' summations, the court placed its decision on the record. In addressing plaintiffs' complaint, the court found the evidence presented did not support plaintiffs' allegation that defendants had "undermined the area underneath the fence . . . caus[ing] the fence to collapse." The court also noted the lack of testimony regarding the need for a new foundation or new fence. The court found plaintiffs had not presented evidence defendants performed "any work back there" and, assuming they did, plaintiffs had presented "no evidence to suggest" defendants' alleged work "had anything to do with the fence" and "there is nothing now to remediate." Accordingly, the court dismissed plaintiffs' complaint.

Regarding defendants' counterclaim, the court found "there is debris beyond the fence . . . that . . . came from the excavation and removal of the pool

---

[2] The witness's name in the trial transcript is Trapasso. The written estimate he prepared was on letterhead for "Trapallo Construction Inc."

7                                                                    A-0709-22

that was on . . . plaintiff's property, that's very clear" and held that "cleaning up what's there" was plaintiffs' responsibility. The court cited the $74,250 estimate; the stipulation of settlement in the State's case against Les, which contained an acknowledgment the lap pool "constitute[d] a nuisance and encroach[ed] on the neighboring land-owners" and a requirement Les remove and fill in the lap pool; the transcript from the municipal-court proceeding regarding the citations Joseph had received about the remnants of the lap pool, specifically language in the transcript confirming Joseph's testimony that he had agreed to grant Les access to defendants' property for sixty days so he could "remove all of that debris"; and the grading-permit application.

On October 24, 2022,[3] the court issued a judgment dismissing plaintiffs' complaint with prejudice and awarding defendants $74,250, "which shall be used to remove debris and properly grade the subject area." On December 5, 2022, the court issued an amended judgment with the same provisions.

On appeal, plaintiffs argue the court erred in finding them responsible for the removal of the soil on defendants' property because they had not caused the soil to be on defendants' property. They contend that "[b]ecause damages were

---

[3] In an apparent typographical error, the court dated the judgment October 24, 2024.

not allocated among the parties, this matter should be remanded for a new trial on damages." They do not challenge any other aspect of the judgment, like the dismissal of the complaint and the award of damages for the removal of non-soil debris on the counterclaim. Accordingly, we deem those issues waived. N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015) (finding "[a]n issue that is not briefed is deemed waived upon appeal").

## II.

The standard of review applied to "findings and conclusions of a trial court following a bench trial [is] well-established . . . ." Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017). "We review the trial court's determinations, premised on the testimony of witnesses and written evidence at a bench trial, in accordance with a deferential standard." D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013). The reviewing court should "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Allstate, 228 N.J. at 619 (quoting Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015)). In a non-jury case, the trial court's opinion should not be disturbed "unless we are convinced that [it is] so manifestly unsupported or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interest of

justice[.]" D'Agostino, 216 N.J. at 182 (alteration in original) (quoting Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)).  The trial court's legal determinations are reviewed de novo.  Ibid.  (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

We conclude the trial court's findings are grounded in sufficient credible evidence in the record.  Other than one statement made by defendant during trial, plaintiffs rely on unsworn comments made before trial while the court was exploring the possibility of settlement to support their argument they shouldn't be responsible for the cost of removing soil from defendants' property.  But other evidence in the record, including the documents cited by the court and Les's own testimony, supports the court's findings.

In his testimony, Les admitted:  plaintiffs knew when they purchased their property the lap pool was constructed in part on defendants' property; the lap pool was demolished after plaintiffs had purchased their property and were unable to reach agreement with defendants regarding the purchase of or easement over the part of defendants' property on which the lap pool had been built; remnants and debris from the lap pool remained on defendants' property; and Les executed the March 6, 2014 stipulation of settlement, which included an acknowledgement plaintiffs' lap pool "constitute[d] a nuisance, and

10

encroach[ed] on the neighboring land-owners" and a requirement Les remove and fill in the lap pool, an obligation he admittedly did not complete. That evidence, along with other evidence about "fill dirt" from plaintiffs' property remaining on defendants' property, constitutes sufficient credible evidence in the record to support the trial court's conclusions and damages award in favor of defendants' on their counterclaim. Accordingly, we affirm.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION