**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3808-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RAPHAEL E. GARLAND,

     Defendant-Appellant.

_____

Argued May 25, 2022 – Decided July 11, 2022

Before Judges Whipple, Geiger and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 19-08-2261.

Cody T. Mason, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Nakea J. Barksdale, Assistant Deputy Public Defender, of counsel and on the brief).

Kaili E. Matthews, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Acting Attorney General, attorney; Kaili E. Matthews, of counsel and on the brief).

PER CURIAM

Defendant, Raphael E. Garland, appeals his jury trial conviction and sentence for third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7). Defendant contends: (1) the trial court erred in refusing to give a jury charge on simple assault, a lesser-included offense of the second-degree aggravated assault crime for which he was indicted; (2) the trial court erred by not giving a jury charge sua sponte concerning the reliability of identification testimony by the arresting officer; (3) the trial court erred in refusing to provide an adverse inference jury charge concerning video surveillance footage that defendant alleges was not provided in discovery; (4) the trial judge's errors cumulatively deprived defendant of a fair trial; and (5) the trial judge at sentencing impermissibly double-counted the harm element of the offense. After carefully reviewing the record in light of the arguments of the parties and the applicable legal principles, we affirm.

I.

We discern the following facts from the trial record. On April 3, 2019, Brian Moseti and a couple of his friends were drinking at the Rio Lounge, a Newark nightclub. While there, a male patron grabbed the buttocks of Moseti's female friend. Moseti then "approached the guy[] and . . . asked him if he . . .

2

wanted to dance with [his friend]." Moseti noted that the man was wearing a pink hat. The male patron shoved Moseti, causing him to stagger and fall. Moseti got up and was escorted by security out of the nightclub.

Moseti waited outside the nightclub because his belongings were still inside. After approximately fifteen to twenty minutes, he re-entered the nightclub lobby. Newark Police Officer Reynaldo Barte, who was working security, was also in that area.

While Moseti was waiting in the lobby, the man with the pink hat approached, accompanied by several other people, and punched him. Moseti was pulled outside where the group of individuals continuously punched and kicked him in the face.

Officer Barte witnessed the assault and intervened, threatening to use his pepper spray. All but one of the individuals who were striking Moseti fled. One individual, however, continued to attack Moseti, which prompted Barte to discharge pepper spray against him. That provided an opportunity for Moseti to break away and run towards the parking lot. Despite being pepper sprayed, the remaining assailant gave chase. Moseti fell to the ground, at which point the pursuing assailant resumed his attack. Moseti begged the assailant to stop to no avail. The assailant relentlessly punched Moseti in the face, which resulted in

3

him "bleeding a lot." Moseti was able to turn toward the assailant and grab one of his dreadlocks. The assailant stopped attacking Moseti as police officers arrived at the scene.

Officer Barte followed the assailant, defendant, to his car, never losing sight of him. Barte ordered defendant to exit his vehicle and placed him under arrest. Barte did not observe any injuries to defendant but did notice blood on defendant's sneakers and jeans. At the scene, defendant received treatment from EMTs after complaining about his eyes.

Moseti was taken to the hospital where he was admitted and remained for four days. Moseti sustained the following injuries: five fractures to his nose, a broken jaw that was wired shut for six weeks, a laceration to his lip that required stitches, and Le Fort fracture.[1] Additionally, a tube needed to be inserted in his nose to allow him to breath because his nose had sustained numerous fractures. The assault also resulted in broken bones on both sides of his face, which required doctors to insert screws. His injuries will require lip surgery at some point in future.

---

[1] We understand a Le Forte fracture to be a type of transverse fracture of the midface. See Facial Management Handbook, U. of Iowa Health Care, https://medicine.uiowa.edu/iowaprotocols/facial-fracture-management-handbook-lefort-fractures (last modified Aug. 27, 2019).

On August 21, 2019, a grand jury returned an indictment charging defendant with second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1).

Judge Mayra V. Tarantino presided over a three-day jury trial in October and November 2019. On November 7, 2019, the jury acquitted defendant of second-degree aggravated assault but convicted him of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7).

On March 4, 2020, Judge Tarantino sentenced defendant to five years in prison, to be served consecutively to the term of imprisonment related to his parole violation, N.J.S.A. 2C:45-5(c).

This appeal follows. Defendant raises the following issues for our consideration:

> POINT I
>
> THE TRIAL COURT'S FAILURE TO GIVE THE REQUESTED INSTRUCTION ON SIMPLE ASSAULT AS A LESSER-INCLUDED OFFENSE OF AGGRAVATED ASSAULT CONSTITUTED A VIOLATION OF DEFENDANT'S RIGHT TO DUE PROCESS AND A FAIR TRIAL.
>
> POINT II
>
> THE TRIAL COURT'S OMISSION OF AN IDENTIFICATION CHARGE ADDRESSING THE ARRESTING OFFICER'S IDENTIFICATION OF DEFENDANT CONSTITUTED PLAIN ERROR AND

POSSESSED A CLEAR CAPACITY TO BRING ABOUT AN UNJUST RESULT. (Not Raised Below).

POINT III

THE TRIAL COURT ERRED IN FAILING TO PROVIDE JURORS WITH AN ADVERSE-INFERENCE INSTRUCTION AFTER THE STATE FAILED TO PRESERVE THE SURVEILLANCE FOOTAGE OUTSIDE OF RIO LOUNGE, THEREBY ALLOWING CRITICAL [EVIDENCE] TO BE DESTROYED.

POINT IV

THE CUMULATIVE EFFECT OF THE TRIAL ERRORS DEPRIVED DEFENDANT OF DUE PROCESS AND A FAIR TRIAL AND WARRANTS REVERSAL OF HIS CONVICTIONS. (Not Raised Below).

POINT V

THE SENTENCING COURT ERRED IN FINDING AGGRAVATING FACTOR TWO BECAUSE IT DOUBLE-COUNTED THE HARM INHERENT TO AGGRAVATED ASSAULT AND IMPROPERLY REPLACED ITS JUDGMENT FOR THE JURY'S BY CONSIDERING ACQUITTED CONDUCT.

II.

We first address defendant's contention that the trial court erred in not providing the jury with the option to convict for the lesser-included offense of simple assault. During the charge conference conducted pursuant to Rule 1:8-

7(b), defendant requested the trial court to instruct the jury on the following lesser-included offenses: (1) third-degree aggravated assault, N.J.S.A. 2C:12-1(b); (2) disorderly persons simple assault, N.J.S.A. 2C:12-1(a); and (3) petty disorderly persons mutual fighting, N.J.S.A. 2C:12-1(a). The State consented to the lesser-included offense of third-degree aggravated assault—the offense for which defendant was eventually found guilty. Judge Tarantino denied defendant's request to instruct the jury on simple assault and mutual fighting.[2] Regarding simple assault, the judge determined that the trial evidence—photographs, medical records, and testimony—did not support that charge given the severity of the injuries that were inflicted on the victim. The judge noted that Moseti "testified he had screws on his cheeks. He had a tube in through his nose that he needed to use to breathe and his jaw was wired shut for six weeks and he needed to eat through a straw." The judge also recognized that Moseti testified that he still had issues with his lips. We agree with the trial judge that given the severity of the injuries and the manner in which they were inflicted,

---

[2] Defendant does not contend on appeal that the trial court erred in refusing to instruct the jury on the petty disorderly persons offense of mutual combat. See N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 504 n.2 (App. Div. 2015) ("[A]n issue that is not briefed is deemed waived upon appeal." (citing Fantis Foods v. N. River Ins. Co., 332 N.J. Super. 250, 266–67 (App. Div. 2000))).

A-3808-19

there was no rational basis for a verdict convicting defendant of the lesser offense of simple assault.

We begin our analysis by acknowledging the governing legal principles. "It is a bedrock principle of our criminal justice system that '[a]ppropriate and proper charges to a jury are essential for a fair trial.'" State v. Canfield, 470 N.J. Super. 234, 269 (App. Div. 2022) (alteration in original) (quoting State v. Carrero, 229 N.J. 118, 127 (2017)), certif. granted, __ N.J. __ (2022). As such, "the public interest in a correct verdict requires a trial court to submit to the jury not only those offenses charged in the indictment, but also uncharged lesser-included offenses grounded in the evidence." State v. Denofa, 187 N.J. 24, 41 (2006).

Our Supreme Court has recognized that "when a lesser offense is requested by a defendant, as in this case, 'the trial court is obligated, in view of defendant's interest, to examine the record thoroughly to determine if . . . [there is a] rational-basis'" to provide a charge on lesser-included offenses. State v. Savage, 172 N.J. 374, 397 (2002) (quoting State v. Crisantos, 102 N.J. 265, 278 (1986)). Generally, a "defendant is entitled to a charge on all lesser included offenses supported by the evidence '[t]o give full force to the reasonable doubt standard and to preserve defendants' rights to have the jury consider all

defenses.'" State v. Reddish, 181 N.J. 553, 626 (2004) (alteration in original) (quoting State v. Short, 131 N.J. 47, 53 (1993)).  It also is clearly established, however, that "trial courts 'shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.'"  Ibid. (quoting N.J.S.A. 2C:1-8(e)).

"In order to justify a lesser included offense instruction, a rational basis must exist in the evidence for a jury to acquit the defendant of the greater offense as well as to convict the defendant of the lesser, unindicted offense."  Savage, 172 N.J. at 396 (citing State v. Brent, 137 N.J. 107, 113–14 (1994)).  When, as in this case, the defendant has requested the lesser-included charge, "the trial court must view the evidence in the light most favorable to the defendant." Carrero, 229 N.J. at 128; Reddish, 181 N.J. at 626; see also Canfield, 470 N.J. Super. at 272–73.  Although our Supreme Court has recognized that the rational-basis standard is "low" for charging the jury on a lesser-included offense that has been requested by the defendant, "sheer speculation does not constitute rational basis."  Reddish, 181 N.J. at 626.

The distinction between second-degree aggravated assault, third-degree aggravated assault, and simple assault focuses on the severity of injury suffered by the victim.  Second-degree aggravated assault requires "serious bodily

injury," third-degree aggravated assault requires "significant bodily injury," and simple assault requires "bodily injury."

"Serious bodily injury" is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." N.J.S.A. 2C:11-1(b). "Significant bodily injury" is defined as "bodily injury which creates a temporary loss of the function of any bodily member or organ or temporary loss of any one of the five senses." N.J.S.A. 2C:11-1(d). Finally, "[b]odily injury," sometimes referred to as mere bodily injury, is defined as "physical pain, illness or any impairment of physical condition." N.J.S.A. 2C:11-1(a).

The trial judge reasoned that the extent of Moseti's injuries were inconsistent with a simple assault verdict. On appeal, defendant does not dispute the severity of the victim's injuries. Rather, he now argues that a jury might have found that the injuries amounting to serious and significant bodily harm were caused by the other assailants and that defendant was responsible only for causing mere bodily injury. The trial evidence belies that argument, even when viewed in the light most favorable to defendant. Carrero, 229 N.J. at 128. Even assuming for the sake of argument that other assailants caused some of Moseti's

injuries,[3] there is no rational basis to believe that defendant was not responsible for the victim's facial injuries. Defendant was only one who continued his attack after Barte intervened. The others fled when Barte threatened to deploy pepper spray. Even after being sprayed, defendant pursued the victim and resumed his attack, continuing to strike Moseti in the face repeatedly. In these circumstances, we are satisfied that there was no rational basis upon which the jury might have convicted defendant of disorderly persons simple assault.

## III.

We turn next to defendant's contention, raised for the first time on appeal, that the trial court erred by failing to instruct the jury on eyewitness identifications sua sponte.[4] Defendant claims the State's case relied on an

---

[3] In view of the evidence of defendant's relentless attack, which continued after the other assailants fled, we need not rely on the legal principle that "a person is legally accountable for the conduct of another when . . . he [or she] is an accomplice of such other person in the commission of an offense." N.J.S.A. 2C:2-6(b). We note, however, that the principle of accomplice liability provides an independent basis to reject defendant's contention on appeal that there was a rational basis for a simple assault jury instruction because the jury might have found that the other attackers, not defendant, caused the significant/serious bodily harm the victim sustained.

[4] Defendant has submitted a letter pursuant to Rule 2:6-11(d) regarding our recent decision in State v. Watson, __ N.J. Super. __ (App. Div. 2022). Defendant argues that our observations in Watson relating to the suggestiveness of in-court identifications are relevant to this matter. We reject

unreliable identification by Barte. That newly-minted contention is belied by the record. We conclude that the reliability of Barte's identification of defendant was not contested at trial, likely because there was no factual basis upon which to do so.

Proper jury instructions are "crucial to the jury's deliberations on the guilt of a criminal defendant . . . ." State v. Jordan, 147 N.J. 409, 422 (1997). In its jury instructions, a "trial court must give 'a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find.'" State v. Baum, 224 N.J. 147, 159 (2016) (quoting State v. Green, 86 N.J. 281, 287–88 (1981)).

A "missing instruction on identification is reviewed for plain error." State v. Sanchez-Medina, 231 N.J. 452, 468 (2018). When a defendant "does not object or otherwise preserve an issue for appeal at the trial court level, we review the issue for plain error. We must disregard any unchallenged errors or omissions unless they are 'clearly capable of producing an unjust result.'" State v. Santamaria, 236 N.J. 390, 404 (2019) (quoting R. 2:10-2). Our Supreme

this argument because defendant has not challenged Barte's in-court identification on appeal. See Alloway Twp., 438 N.J. Super. at 504 n.2 ("[A]n issue that is not briefed is deemed waived upon appeal." (citing Fantis Foods, 332 N.J. Super. at 266–67)). In any event, we do not read Watson as requiring a trial court to provide an in-court identification charge sua sponte.

Court has made clear that "[p]lain error is a high bar and constitutes 'error not properly preserved for appeal but of a magnitude dictating appellate consideration.'" Id. at 404 (quoting State v. Bueso, 225 N.J. 193, 202 (2016)). "Moreover, that high standard provides a strong incentive for counsel to interpose a timely objection, enabling the trial court to forestall or correct a potential error." Bueso, 225 N.J. at 203. In the context of jury instructions, "[i]f the defendant does not object to the charge at the time it is given, there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case." State v. Singleton, 211 N.J. 157, 182 (2012) (citing State v. Macon, 57 N.J. 325, 333–34 (1971)).

Importantly, "[a] defendant who does not raise an issue before a trial court bears the burden of establishing that the trial court's actions constituted plain error." State v. Ross, 229 N.J. 389, 407 (2017) (citing State v. Weston, 222 N.J. 277, 295 (2015)). A defendant must shoulder this burden "because 'to rerun a trial when the error could easily have been cured on request, would reward the litigant who suffers an error for tactical advantage either in the trial or on appeal.'" Ibid. "To determine whether an alleged error rises to the level of plain error, it must be evaluated in light of the overall strength of the State's case."

State v. Singh, 245 N.J. 1, 14–15 (2021); accord State v. Walker, 203 N.J. 73, 90 (2010).

Furthermore, the prejudicial effect of an omitted instruction is evaluated "in light of the totality of the circumstances—including all the instructions to the jury, [and] the arguments of counsel." State v. Marshall, 123 N.J. 1, 145 (1991) (alteration in original) (quoting Kentucky v. Whorton, 441 U.S. 786, 789 (1979)). "Portions of a charge alleged to be erroneous cannot be dealt with in isolation but the charge should be examined as a whole to determine its overall effect." Jordan, 147 N.J. at 422 (quoting State v. Wilbely, 63 N.J. 420, 422 (1973)).

The trial court in this instance was not required to provide the jury with an identification instruction sua sponte because identification was not at issue.[5] Officer Barte not only witnessed the attack but actively intervened, pepper spraying the assailant who then pursued and resumed the attack on the victim. Barte followed defendant to his vehicle and placed defendant under arrest. Nothing in the record suggests that Barte lost sight of defendant before taking

---

[5] We note that defendant never requested a Wade/Henderson hearing to challenge Barte's identification of defendant. See United States v. Wade, 388 U.S. 218 (1967); State v. Henderson, 208 N.J. 208 (2011). Nor did defendant object to Barte's in-court identification.

him into custody. Furthermore, defendant asked for medical assistance from responding EMTs, complaining of eye pain. Defendant, it bears emphasis, was the only assailant who was pepper sprayed.

In these circumstances, there was no need for the judge to instruct the jury on the risk of eyewitness misidentification. We add that Judge Tarantino gave appropriate instructions on the reasonable doubt standard of proof, witness credibility, and prior inconsistent statements. The jury was thus adequately instructed with regard to Barte's testimony.

IV.

Defendant next argues that the trial court abused its discretion in rejecting defendant's request for an adverse inference charge regarding what defendant assumes to be a missing video surveillance recording. We discern the following pertinent facts from the trial record.

Defendant requested adverse inference jury instructions for missing police body-worn camera footage and missing surveillance video footage taken from outside the nightclub. On the morning of the first day of trial, Judge Tarantino heard oral arguments pertaining to the adverse inference jury instructions. She determined that she would reserve decision on defendant's requests until after she had heard testimony from the witnesses.

15

At trial, the defense called Newark Police Sergeant Mark Armstead to testify regarding a recording made by the body-worn camera he was wearing when he responded to the fight outside the nightclub.

Defense counsel also asked Armstead if he had ever viewed surveillance video obtained from the nightclub. Armstead testified that he first heard of the nightclub surveillance recording from Newark Police Detective Joe Dopazo. Armstead noted that Dopazo mentioned such a video in his Use of Force Report pertaining to the incident, but that Armstead himself did not view, download, or otherwise possess first-hand knowledge of any surveillance video recording.

After Sergeant Armstead testified, the trial court determined that an adverse inference charge as to the body-worn camera footage was appropriate but denied defendant's request for an adverse inference charge pertaining to the nightclub surveillance footage. The trial court explained:

> The only thing that has changed is it was your belief that it was . . . Officer Armstead that viewed the surveillance footage. But we learned now it wasn't Officer Armstead. It was Detective Dopazo. And without having . . . Detective Dopazo testify that what he viewed [and] then later relayed to Officer Armstead is either the same or different than the surveillance video that was produced to you, the [c]ourt has nothing but your argument that it is in fact different.

16

A-3808-19

Judge Tarantino explained that in discovery the State had produced a video surveillance recording from Detective Dopazo's file, which had been obtained from the nightclub. Importantly, Judge Tarantino further explained that defendant was at liberty to further probe the State's representations regarding the surveillance recording that had been provided in discovery. The defense was authorized, for example, to subpoena Detective Dopazo to testify as to what he viewed in the surveillance video and to confirm whether the video the prosecutor turned over in discovery was a duplicate of the recording that Dopazo viewed. Defendant did not pursue that option. Accordingly, the record before us does not support defendant's claim that the State failed to turn over discoverable material, which is the foundation for an adverse inference instruction.

The scope of our review of the trial court's decision not to issue an adverse inference instruction is limited. We review a denial of a request for an adverse inference jury charge applying a deferential abuse of discretion standard. See State v. Dabas, 215 N.J. 114, 140–41 (2013) (finding that the trial court abused its discretion by not giving an adverse inference charge that defendant requested).

A-3808-19

As we have noted, the foundation for any such instruction is the failure by the State to comply with its discovery obligations. "When a party has a lawful obligation to preserve evidence and fails to do so, a court may charge the jury on its right to draw an adverse inference against that party." State v. Anthony, 237 N.J. 213, 243–44 (2019) (Albin, J., dissenting). Stated in another way, "[a]n adverse-inference charge is one permissible remedy for a discovery violation[.]" Dabas, 215 N.J. at 140.

Rule 3:13-3(f) provides that

> [i]f at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, it may order such party to permit the discovery of materials not previously disclosed, grant a continuance or delay during trial, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems appropriate.

Considering all relevant circumstances, we conclude the trial court did not abuse its discretion in concluding that there was no basis for an adverse inference instruction. Defendant was in fact provided in discovery with surveillance video from the nightclub, and defendant did not establish that the police were in possession of additional relevant surveillance video that had not been turned over.

18

We add that even were to assume for the sake of argument that the trial court abused its discretion in refusing to provide an adverse inference instruction, any such error was harmless. The harmless error standard "requires that there be 'some degree of possibility that [the error] led to an unjust result.'" State v. R.B., 183 N.J. 308, 330 (2005) (alteration in original) (quoting State v. Bankston, 63 N.J. 263, 273 (1973)). For an error to require reversal, "[t]he possibility must be real, one sufficient to raise a reasonable doubt as to whether [it] led the jury to a verdict it otherwise might not have reached." State v. Scott, 229 N.J. 469, 484 (2017) (alterations in original) (quoting R.B., 183 N.J. at 330).

In this instance, we are satisfied that the allegedly missing surveillance footage would not have made a difference. Defendant argues "the missing footage may have shown that [defendant] was mistakenly identified as the assailant. There was no corroborating evidence to support the conclusion that [defendant] was the person who attacked Moseti, and the lost evidence could either exculpate [defendant] or rebut Barte's identification of [defendant] as the perpetrator." However, as we have already noted, identification was not a key issue at trial. Defendant's argument concerning the potential impact of the allegedly "missing" video recording falls into the category of mere speculation.

V.

Defendant next argues that the cumulative effect of the errors during the trial warrant reversal. We acknowledge that "[w]hen legal errors cumulatively render a trial unfair, the Constitution requires a new trial." State v. Weaver, 219 N.J. 131, 155 (2014) (citing State v. Orecchio, 16 N.J. 125, 129 (1954)). Furthermore, "[i]f a defendant alleges multiple trial errors, the theory of cumulative error will still not apply where no error was prejudicial and the trial was fair." Ibid. "[D]evised and administered by imperfect humans, no trial can ever be entirely free of even the smallest defect. Our goal, nonetheless, must always be fairness. A defendant is entitled to a fair trial but not a perfect one.'" State v. R.B., 183 N.J. 308, 333–34 (2005) (quoting Lutwak v. United States, 344 U.S. 604, 619 (1953)).

In this instance, we do not believe that any errors occurred at trial, harmless or otherwise. Accordingly, we reject defendant's cumulative error contention.

VI.

Finally, we address defendant's argument that the trial court at sentencing misapplied and improperly weighed the applicable aggravating and mitigating factors. The gravamen of defendant's sentencing argument is that the judge

20

double-counted the harm caused to the victim. We begin by summarizing the trial court's findings.

Judge Tarantino found the following aggravating factors: aggravating factor two, N.J.S.A. 2C:44-1(a)(2) ("The gravity and seriousness of harm inflicted on the victim, including whether or not the defendant knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to advanced age, ill-health, or extreme youth, or was for any other reason substantially incapable of exercising normal physical or mental power of resistance"); aggravating factor three, N.J.S.A. 2C:44-1(a)(3) ("The risk that the defendant will commit another offense"); aggravating factor six, N.J.S.A. 2C:44-1(a)(6) ("The extent of the defendant's prior criminal record and the seriousness of the offenses of which the defendant has been convicted"); and aggravating factor nine, N.J.S.A. 2C:44-1(a)(9) ("The need for deterring the defendant and others from violating the law").

Judge Tarantino found only one mitigating factor, factor eleven, N.J.S.A. 2C:44-1(b)(11) ("The imprisonment of the defendant would entail excessive hardship to the defendant or the defendant's dependent").

As to aggravating factor two, Judge Tarantino provided an extensive analysis. Preliminarily, she stated,

Mr. Garland, you repeatedly punched and kicked the victim in this case as he lay on the sidewalk and when the victim retreated you pursued him and punched him twice more. The victim suffered five fractures to his nose, a grade one Le Fort fracture, a grade two Le Fort fracture, a 2-centimeter and 3-centimeter laceration to the upper [lip], [and] an extraction of a supernumerary tooth. The victim also required surgery to repair the damage to his face, including the implantation of screws in both sides of his face. The victim's upper lip will be permanently disfigured without surgical intervention.

Judge Tarantino explicitly addressed defendant's argument that factor two "should not be considered because it would constitute double counting as the seriousness of the assault was already considered by the jury." The judge cited case law and recognized that

When a sentencing court considers the harm a defendant caused to a victim for purpose of—purposes of determining whether that aggravating factor is implicated should engage in a pragmatic assessment of the totality of the harm inflicted by the offender on the victim to the end that defendants who purposely, recklessly inflict substantial harm receive more severe sentences than other defendants.

The [definition] of significant bodily injury in N.J.S.A. 2C:12-1(b)7 clearly contemplates a level of injury severe enough to trigger aggravating factor two, the gravity and seriousness of the harm encompassed by that aggravating factor is a broader and less precise concept that permits the exercise of sound discretion by the sentencing court in determining whether the extent

22

of the harm to the victim warrants application of the aggravating factors.

Applying the law to the facts of this case, the trial court determined that

> you [defendant] viciously attacked a victim while he was defenseless on the sidewalk. You then pursued him when he tried to run and attacked him again. You caused him numerous injuries, several of which could have been considered significant bodily injuries in their own right. In doing so you did far more than the minimum required to establish the elements of third-degree aggravated assault. Accordingly, the Court finds that the gravity and seriousness of the harm inflicted on the victim at the time of the offense warrant a finding of aggravating factor two, aggravating factor is given the utmost weight.

Regarding aggravating factor three, Judge Tarantino determined that defendant had "a history of criminal activity including two juvenile adjudications and one prior indictable conviction for which [he] served time in prison." The judge also noted that defendant was "on parole when [he] committed the present offense." The judge concluded that "there is a risk [defendant] will commit another offense and continue [his] pattern of antisocial behavior."

The trial court found that aggravating factor six also applied based on defendant's juvenile adjudications and adult first-degree robbery conviction.

A-3808-19

Regarding aggravating factor nine, the trial court found defendant's attack on Moseti was a result of volitional, deliberate, and non-impulsive behavior. She added that a prison sentence was needed "to send a clear message to [defendant] and others that such conduct will be met with severe punishment."

The trial court concluded that

> having found aggravating factors two, three and nine applicable and giving those factors the greatest weight possible and aggravating six having been given appropriate weight and finding mitigating factors eight and nine inapplicable, but finding mitigating factor eleven applicable and having given it minimal weight the Court finds that the aggravating factors clearly and convincingly substantially preponderate over the one mitigating factor.

The trial court thereupon sentenced defendant to five years in prison. After applying the Yarbough[6] factors, the judge ordered the prison term to run consecutive to the term of imprisonment imposed by the Parole Board for defendant's violation of parole.

Sentencing decisions are reviewed under a highly deferential standard. See State v. Roth, 95 N.J. 334, 364–65 (1984) (holding that an appellate court may not overturn a sentence unless "the application of the guidelines to the facts

---

[6] State v. Yarbough, 100 N.J. 627, 633 (1985).

of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience").  Our review is therefore limited to considering:

> (1) whether guidelines for sentencing established by the Legislature or by the courts were violated; (2) whether the aggravating and mitigating factors found by the sentencing court were based on competent credible evidence in the record; and (3) whether the sentence was nevertheless "clearly unreasonable so as to shock the judicial conscience."
>
> [State v. Liepe, 239 N.J. 359, 371 (2019) (quoting State v. McGuire, 419 N.J. Super. 88, 158 (App. Div. 2011)).]

"[A]ppellate courts are cautioned not to substitute their judgment for those of our sentencing courts."  State v. Case, 220 N.J. 49, 65 (2014) (citing State v. Lawless, 214 N.J. 594, 606 (2013)).  Relatedly, a trial court's exercise of discretion that is in line with sentencing principles "should be immune from second-guessing."  State v. Bieniek, 200 N.J. 601, 612 (2010).

With respect to the consideration of aggravating and mitigating circumstances, "the [sentencing] court must describe the balancing process leading to the sentence."  State v. Kruse, 105 N.J. 354, 360 (1987) (citations omitted).  "To provide an intelligible record for review, the trial court should identify the aggravating and mitigating factors, describe the balance of those factors, and explain how it determined defendant's sentence."  Ibid.  "Merely

25

enumerating those factors does not provide any insight into the sentencing decision, which follows not from a quantitative, but from a qualitative, analysis." Id. at 363 (citing State v. Morgan, 196 N.J. Super. 1, 5 (App. Div. 1984)).

Importantly for purposes of this appeal, our Supreme Court has instructed that courts must be careful not to "double count" aggravating circumstances that have already been accounted for in the gradation of the crime(s) for which a defendant has been convicted. That problem can arise when the crime includes a result element established by the degree of harm caused to the victim, such as homicide and assault. Accordingly, "[e]lements of a crime, including those that establish its grade, may not be used as aggravating factors for sentencing of that particular crime." State v. Lawless, 214 N.J. 594, 608 (2013). However, "subject to the bar on double counting an element of the offense in the analysis, the harm inflicted on the victim of the offense for which the defendant is sentenced is relevant to aggravating factor two." Id. at 613.

In State v. Kromphold, the Court further explained,

> Those applications of N.J.S.A. 2C:44-1(a)(2) [in listed cases] suggest that that aggravating factor and the statutory definition of "serious bodily injury" in N.J.S.A. 2C:11-1(b) address different concepts. When a sentencing court considers the harm a defendant caused to a victim for purposes of determining whether

that aggravating factor is implicated, it should engage in a pragmatic assessment of the totality of harm inflicted by the offender on the victim, to the end that defendants who purposely or recklessly inflict substantial harm receive more severe sentences than other defendants. Although the definition of "serious bodily injury" in N.J.S.A. 2C:11-1(b) clearly contemplates a level of injury severe enough to trigger the 1(a)2 aggravating factor, "the gravity and seriousness of the harm" encompassed by that aggravating factor is a broader and less precise concept that permits the exercise of sound discretion by the sentencing court in determining whether the extent of the harm to the victim warrants application of that aggravating factor. We also note that the Legislature did not attempt to link the harm implicated by that aggravating factor with the definition of "serious bodily injury" in N.J.S.A. 2C:11-1(b). See GE Solid State, Inc. v. Div. of Tax'n, 132 N.J. 298, 308 (1993) ("[W]here the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded.").

[162 N.J. 345, 358 (2000).]

We add that, "[a] sentencing court may consider 'aggravating facts showing that [a] defendant's behavior extended to the extreme reaches of the prohibited behavior.'" State v. Fuentes, 217 N.J. 57, 75 (quoting State v. Henry, 418 N.J. Super. 481, 493 (Law Div. 2010)).

We next apply these foundational principles to defendant's argument that the trial court impermissibly engaged in double counting when it found that aggravating factor two applied. The trial court specifically found that defendant

27

"caused numerous injuries, several of which could have been considered significant bodily injuries in their own right." The trial court also determined that the harm defendant inflicted on the victim exceeded the harm minimally needed to prove the third-degree crime for which he was convicted. See State v. A.T.C., 454 N.J. Super. 235, 254–55 (App. Div. 2018) ("A court . . . does not engage in double-counting when it considers facts showing defendant did more than the minimum the State is required to prove to establish the elements of an offense."). We conclude that the court's finding was permissible because "[a] sentencing court may consider 'aggravating facts showing that [a] defendant's behavior extended to the extreme reaches of the prohibited behavior.'" Fuentes, 217 N.J. at 75 (quoting Henry, 418 N.J. Super. at 493).

Relatedly, we reject defendant's argument that the trial court substituted its judgment for that of the jury by accounting for what defendant characterizes as "acquitted conduct." Defendant's reliance on our decision in State v. Tindell, 417 N.J. Super. 530 (App. Div. 2011) is misplaced. In Tindell, we determined that the defendant's sentence was "improperly influenced by the judge's perception that the jury rendered an unjust verdict in defendant's favor." Id. at 568. The trial court in that case made repeated comments criticizing the jury's decision. Id. at 568–70. In the present case, in contrast, Judge Tarantino did

28

not in any way criticize the jury's decision to acquit defendant of second-degree aggravated assault and instead convict him of a lesser-included offense—third-degree aggravated assault.

Defendant also contends the trial court improperly weighed the aggravating and mitigating factors. We disagree. As we have explained, Judge Tarantino conducted a thorough review of the applicable sentencing factors, considered them qualitatively, and determined that the aggravating factors "substantially preponderate[d] over the one mitigating factor." There is no mathematical formula for weighing the aggravating and mitigating factors, see State v. McFarlane, 224 N.J. 458, 466 (2016) (quoting Case, 220 N.J. at 65), and as we have noted, trial judges are afforded broad discretion in this qualitative process. See Bieniek, 200 N.J. at 612.

In sum, the imposition of a five-year term of imprisonment, which is at the top of the authorized three- to five-year range for a third-degree conviction, N.J.S.A. 2C:43-6(a)(3), did not constitute an abuse of discretion and by no means shocks the judicial conscience so as to warrant appellate intervention. Roth, 95 N.J. at 364–65.

To the extent we have not specifically addressed them, any additional arguments raised by defendant lack sufficient merit to warrant discussion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION